UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Steven Moore, D.C. § | |
| *Plaintiff*, § | |
| § | CIVIL ACTION NO.: 1:23-cv-511-JRN |
| v. § | |
| § | JURY DEMANDED |
| Examworks, L.L.C. § | |
| *Defendant.* § | |

**Plaintiff Steven Moore, D.C.'s Second Amended Complaint**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES **STEVEN MOORE, D.C.** ("**MOORE**"), Plaintiff herein, and files this his Second Amended Complaint against Defendant **EXAMWORKS, L.L.C.** ("**EXAMWORKS**"), and, in support thereof, would show the Court as follows:

**I. Parties and Service**

1. Plaintiff **STEVEN MOORE, D.C.** is an individual who is a resident of the State of Texas residing in Jefferson County, Texas.

2. Defendant **EXAMWORKS, L.L.C.** is a foreign limited liability company with its principal office in Atlanta, Georgia. Defendant has been served and made an appearance herein.

**II. Jurisdiction and Venue**

3. This Court has found it has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

5. The events forming the basis of this suit occurred in the Western District of Texas.

### III. General Allegations

6. **MOORE** is a chiropractor licensed by the Texas Board of Chiropractic Examiners.

7. Since 2012, he is also what is called a "Designated Doctor," which is a certification issued, or recognized, by the Texas Department of Insurance. To be a Designated Doctor, **MOORE** was required to complete specialized training and testing and is subject to specific rules and regulations.

8. As a Designated Doctor, **MOORE** performs independent exams of claimants on behalf of the Texas Department of Insurance, Division of Workers' Compensation. Such examinations are referred to as "Designated Doctor Examinations." Aside from performing Designated Doctor Examinations, **MOORE** also operates his own and independent chiropractic practice.

9. **MOORE** – *not* **EXAMWORKS**, or any other administrative services company – is the "Designated Doctor" for the Texas Department of Insurance and the party who is awarded/assigned exams by the Department based on his professional license, his knowledge and skills, and his seniority among the other designated doctors.

10. The Texas Department of Insurance, Division of Workers' Compensation maintains an automated online system called "TXCOMP" wherein Designated Doctors, such as **MOORE**, maintain a personal profile that serves to exchange information and facilitate communications with workers' compensation system participants. Through this online system, **MOORE** and other Designated Doctors can schedule and bill for their Designated Doctor Examinations. Through this TXCOMP system, Designated Doctors can also use the administrative services of different companies to schedule and bill for Designated Doctor Examinations.

11. **EXAMWORKS**, is an administrative services agent company that assists in

scheduling and billing Designated Doctor Examinations for Designated Doctors such as **MOORE**. **EXAMWORKS** is, thus, an agent of Designated Doctors with the Texas Department of Insurance, Division of Workers' Compensation. Designated Doctors remain personally responsible for their agent company's actions in connection with their Designated Doctor Examinations.

12. In 2013, **MOORE** entered into an agreement entitled "Independent Contractor Agreement" with Barnes and Powell, Inc. d/b/a Maven Exams which was succeeded by LE TRANSITION, INC. f/k/a Landmark Exams, Inc. and d/b/a Landmark Exams. Landmark exams was then succeeded by **EXAMWORKS, L.L.C.**

13. The Independent Contractor Agreement consisted of Maven Exams' agreeing to provide administrative services to **MOORE**, such as scheduling, billing, and payments. The rates that may be charged in connection with Designated Doctor Examinations are established and regulated by the Texas Department of Insurance. Designated Doctors and any administrative services agent company acting on their behalf are obligated to comply with those regulations and may not bill more than the allowable rates.

14. By its nature, the Independent Contractor Agreement established a relationship of trust and confidence between the parties, given that Maven Exams agreed to act—and did act— as **MOORE**'s agent with the Texas Department of Insurance.[1] Thus, the Agreement essentially established Maven Exams as an outsourced office manager (i.e., a billing and scheduling representative) and agent for **MOORE** in connection with his Designated Doctor Examinations.

---

[1] See 28 Tex. Admin. Code § 127.200(b) (stating that "any person with whom a designated doctor contracts or otherwise permits to perform designated doctor administrative duties on behalf of the designated doctor qualifies as the doctor's 'agent'").

15. **MOORE** then began performing Designated Doctor Examinations which were scheduled, billed, and collected by Maven Exams. **MOORE** performed these examinations throughout Texas. The location of the examinations was subject to Maven Exams' scheduling of the same.

16. In or about April 2015, Landmark Exams, the successor to Maven Exams, transitioned to **EXAMWORKS, L.L.C.** Upon information and belief, certain assets and liabilities of Landmark Exams were purchased by **EXAMWORKS**. **MOORE** did not sign an agreement with **EXAMWORKS**; however, he kept working with **EXAMWORKS** just exactly like he did with Maven Exams and Landmark Exams.

17. **MOORE** did not work "for" Maven Exams under the Agreement. Rather, Maven Exams was supposed to work for him. **MOORE** remained independent and responsible for his own services provided as a licensed professional in connection with his DDEs, and under state regulations, was also responsible for the acts of Maven Exams.

18. The Maven Agreement established a relationship of personal trust, confidence, skill, character, and agency between **MOORE** and Maven Exams and, by its nature, contemplates and/or requires performance only by a particular party. **MOORE** has a significant, personal interest in the specific party who will serve as his agent and communicator with the Texas Department of Insurance, schedule his DDEs, and bill and collect for his services – all matters which can affect his chiropractic licensure and his certification as a Designated Doctor, as well as subject him to personal penalties imposed by the Texas Department of Insurance and liability to claimants and/or insurers if not performed properly. In other words, the Maven Agreement inevitably required **MOORE** to put his trust and confidence in Maven Exams, and for Maven

Exams to serve as his agent in competently and timely scheduling his assigned DDEs, timely and accurately communicating with him and the assigned claimants regarding the DDEs, and honestly and accurately billing and collecting the appropriate amounts for the DDE services he performed.[2]

19. For a period of time, **MOORE** believed he and Maven successfully operated under the Agreement.

20. **MOORE** is unaware as to the date Landmark Exams purportedly "took over" Maven Exams' duties under the Maven Agreement, and when **EXAMWORKS** purportedly "took over" Landmark's duties under the Maven Agreement. To the best of **MOORE**'s knowledge and recollection, **MOORE** never signed a so-called "independent contractor" agreement, or any other written agreement, with **EXAMWORKS**.

21. Upon information and belief, **EXAMWORKS** and its predecessor(s)-in-interest, using **MOORE**'s name and license, habitually overbilled insurers for **MOORE**'s Designated Doctor Examinations without **MOORE**'s being aware of such overbilling. Not only did **EXAMWORKS** and its predecessor(s)-in-interest fail to abide by Independent Contractor Agreement by not sharing half of the billed and collected compensation rates for **MOORE**'s Designated Doctor Examinations and services, but, more disturbingly, **EXAMWORKS** systematically and habitually billed insurers in excess of the maximum rates allowed by the Texas Department of Insurance and/or billed for services that were not actually performed. That

---

[2] Despite boilerplate language in the Maven Agreement (which **MOORE** contends was not properly assigned to or enforceable by **EXAMWORKS**) purporting to disclaim an agency relationship, that disclaimer is not dispositive of the actual legal status of the contracting parties' relationship. Parties to a contract cannot automatically prevent a legal status like agency from arising merely by saying in a provision in their contract that it cannot arise.

is, **EXAMWORKS** committed violations of law and did so using **MOORE**'s name and license number, thereby potentially exposing him to lose his license as chiropractor and certification as Designated Doctor as well as potentially opening him up to other liabilities. Upon information and belief, **EXAMWORKS** kept all the money obtained by the fraudulent overbilling. Workplace realities and the parties' actions in carrying out a contract can, and did here, impliedly modify, alter, or waive any such applicable provision. Both Landmark's and **EXAMWORKS**' true relationship with **MOORE** was one of principal and agent, in that MOORE authorized them to transact business and manage affairs for him and on his behalf in conjunction with his Designated Doctor Examinations. Thus, even if Maven Agreement was properly assigned to **EXAMWORKS**, the Agreement's conclusory disclaimer of agency is not controlling, and in fact, is entirely contrary to and irreconcilable with the parties' true relationship.

22. As custodian of records, **EXAMWORKS** controlled the billing records relating to **MOORE**'s Designated Doctor Examinations. **MOORE** has made repeated requests to view his Explanation of Benefits form and other records, but **EXAMWORKS** always refused and/or failed to provide the same to him. Presumably, **EXAMWORKS** did not share the records with **MOORE** because **EXAMWORKS** were apparently afraid that **MOORE** would find out about the breach of the Independent Contractor Agreement and the fraudulent billing under his name resulting in unjust enrichment to **EXAMWORKS**.

23. **MOORE** decided to terminate his relationship with **EXAMWORKS** and no longer use **EXAMWORKS** as his administrative services agent organization. **MOORE** changed his TXCOMP profile to reflect that change. And though **EXAMWORKS** became upset with **MOORE** for having changed his TXCOMP profile and told him he was breaching their

agreement by removing **EXAMWORKS** from his profile, **MOORE** was still not dissuaded from removing **EXAMWORKS** from his profile and no longer using it as his administrative services agent.

24. **MOORE** performed over 200 Designated Doctor Examinations for which it is believed that **EXAMWORKS** and/or its predecessor(s)-in interest billed and/or overbilled.

25. **EXAMWORKS** is liable for all misconduct it committed, or its predecessors-in-interest committed, in providing scheduling, billing, and other administrative services to **MOORE** in connection with his DDEs, whether pursuant to the Maven Agreement or a subsequent implied or oral agreement.

### Examworks was Moore's Agent

26. Regardless of whether the Maven Agreement was assignable to **EXAMWORKS**, **EXAMWORKS** did serve as his agent in providing administrative billing and scheduling services on his behalf for his DDEs.

27. **EXAMWORKS**' actions and the nature and reality of its relationship with **MOORE** establish that **EXAMWORKS** was **MOORE**'s agent.

28. **EXAMWORKS** received and sent communications to the Department of Insurance, claimants and insurers on **MOORE**'s behalf, was the custodian of **MOORE**'s records for his DDEs, performed duties under the Texas Administrative Code on **MOORE**'s behalf, and performed billing and collection services ostensibly on **MOORE**'s behalf.

29. **EXAMWORKS** knew and understood that, in performing administrative services for **MOORE**, it was deemed **MOORE**'s Agent under Texas Law. Chapter 127 of the Texas Administrative Code, which governs Designated Doctor Examinations, establishes that

**EXAMWORKS** was **MOORE**'s agent with respect to the administrative services it provided in connection with **MOORE**'s DDEs. Under Chapter 127, **MOORE**, as the doctor, has the duty "to bill for designated doctor examinations and receive payment for those examinations in accordance with Chapter 133 [] and Chapter 134 []" of Title 28 of the Texas Administrative Code and to "respond timely to all division appointment, clarification, or document requests, or other division inquiries." 28 TEX. ADMIN. CODE §127.200(a)(10), (11). **MOORE** delegated the administrative duties to **EXAMWORKS** when he designated the company as his Agent in the TXCOMP system.

Notably, 28 Tex. Admin. Code §127.200(b) states:

> For the purposes of this chapter, Chapter 180 of this title (relating to Monitoring and Enforcement), and all other applicable laws and division rules, ***any person with whom a designated doctor contracts or otherwise permits to perform designated doctor administrative duties on behalf of the designated doctor qualifies as the doctor's "agent"*** as defined under §180.1 of this title (relating to Definitions).

Id. at §127.200(b) (emphasis added). Section 180.1(3) defines an "Agent" as "[a] person with whom a system participant utilizes or contracts for the purpose of providing claims service or fulfilling duties under Labor Code, Title 5 and rules.[3] Here, **MOORE** is the designated doctor and system participant, while **EXAMWORKS** was his Agent who he permitted to perform designated doctor administrative duties on his behalf.

30. When the Department of Insurance upgraded its TXCOMP system in August 2019, **EXAMWORKS** received, as **MOORE**'s agent, a PowerPoint presentation from the Department explaining the system changes, and the actions **MOORE** was required to take. The presentation

---

[3] Section 180.1(3) also states that "[t]he system participant who utilizes or contracts with the agent may also be responsible for the administrative violations of that agent."

confirmed **EXAMWORKS**' agency status in providing scheduling and billing services on **MOORE**'s behalf. The presentation describes the "Designated Doctor Agent Relationship" between a designated doctor like **MOORE** and a "Doctor Agent Organization" like **EXAMWORKS**. The presentation explains that "scheduling companies and doctor admins" are called Agents and demonstrates how a designated doctor can designate a company as his Agent in the upgraded TXCOMP system. The Department of Insurance also makes **MOORE**, as the principal, responsible for the transactions performed by his designated Agent.

31. Because **EXAMWORKS** served as **MOORE**'s agents, they owed **MOORE** the fiduciary duties of good faith, fair dealing, honest performance, strict accountability, and full disclosure in connection with the designated doctor administrative duties performed on his behalf.

### Examworks Engages in Fraudulent Billing

32. After the termination of the relationship with **EXAMWORKS**[4], **MOORE** discovered that **EXAMWORKS** and its predecessor(s)-in-interest (collectively, **EXAMWORKS**) habitually overbilled insurers under his license for his DDEs. As **MOORE**'s designated "Agent" but without his knowledge or consent, **EXAMWORKS** systematically and habitually billed insurers in excess of the maximum allowable reimbursement amounts for his DDEs and charged for services using **MOORE**'s license number, either billed insurers for particular tests or exams that he did not perform, or overcharged for services that he did perform, or both. Such fraudulent charges constitute serious violations of the rules and regulations of the State of Texas, violate **EXAMWORKS**' fiduciary duties to **MOORE**, and likely constitute insurance fraud.

---

[4]The relationship ceased in October or November 2019.

33. **EXAMWORKS** – **MOORE**'s fiduciary and custodian of records – concealed its fraudulent billing from **MOORE** and failed to disclose the illegal and unjustified markup it was charging for his services.

34. Upon information and belief, **EXAMWORKS** pocketed all the "extra" money improperly obtained from the insurers for **MOORE**'s DDEs and did not distribute any portion of those improper fees to **MOORE** (because **EXAMWORKS** knew the fraudulently billed services had not in fact been performed by **MOORE** and/or knew it had overcharged for his services).

35. Upon information and belief, **EXAMWORKS**' fraudulent conduct in connection with **MOORE**'s DDEs is not an isolated incident but is part of a larger pattern or scheme in which **EXAMWORKS**, ostensibly "on behalf of" doctors, systematically overbills insurers in order to obtain excess/illegal profits by overpricing, "upcoding," up-charging, and improperly unbundling the doctors' services.

36. **EXAMWORKS**' deceptive services as **MOORE**'s agent interfered with his ability to perform his professional services to the standard set by the State of Texas and in compliance with the laws of Texas, and further interfered with his ability to meet all deadlines and standards required of a Designated Doctor by the Texas Department of Insurance.

37. **EXAMWORKS**' acts and omissions also threaten **MOORE**'s certification as a Designated Doctor, and his chiropractic license, and unnecessarily subject him to potential penalties, disciplinary action, and liability.

### The Discovery Rule and Fraudulent Concealment

38. To the degree, if any, that **EXAMWORKS** asserts that a statute of limitations should bar any of **MOORE**'s claims, **MOORE** pleads the "discovery rule" and "fraudulent

concealment", in that he was not reasonably aware of such claims nor had he been placed on notice of such circumstances as would have imposed duty on him to make inquiry with respect thereto until such a time that was within the applicable limitations interval, **EXAMWORKS** had actual knowledge of the wrong, **EXAMWORKS** concealed the wrong by making a misrepresentation or by remaining silent when it had a duty to speak, **EXAMWORKS** had a fixed purpose to conceal the wrong, and **MOORE** reasonably relied on the misrepresentation or silence. Because of the fiduciary relationship between **MOORE** and **EXAMWORKS**, and because **EXAMWORKS** fraudulently concealed its wrongdoing as set forth herein, **MOORE**'s claims were inherently undiscoverable.

39. **MOORE** pleads the continuing action doctrine and the relation back doctrine.

## IV. Claims

40. The claims mentioned below are alleged jointly and/or alternatively, with consistent and/or inconsistent facts and remedies.

A.   **Breach of Trust/Fiduciary Duty**

40. **MOORE** incorporates by reference all of the allegations set forth at Section III. above as if fully set forth herein.

41. As set forth in further detail above, **MOORE** and **EXAMWORKS** had a principal-agent relationship which necessarily involved a relationship of trust and confidence. As his agent, **EXAMWORKS** owed fiduciary duties to **MOORE** with respect to the designated doctor administrative services it provided for him, including the duty of good faith, fair dealing, honest performance, and strict accountability. **EXAMWORKS** was required to fulfill its designated doctor administrative duties for him with reasonable care, diligence, and good faith

and judgment, and it had a duty to deal openly and to make full disclosure to him regarding its services.

42. **EXAMWORKS** breached the relationship of trust and confidence and its fiduciary duties by fraudulently billing insurers under **MOORE**'s license number for DDE services that **MOORE** did not provide, and by overbilling for DDE services that **MOORE** did provide. In fact, **EXAMWORKS**' mere failure to disclose to **MOORE** all aspects of the billing and collections it performed on his behalf constitutes a breach of **EXAMWORKS**' fiduciary duties. Examworks also breached its fiduciary duties to **MOORE** by failing to perform its scheduling, billing, collection, and record-keeping services for him with reasonable care, diligence, and good faith and judgment.

43. As a result of **EXAMWORKS**' misconduct, **MOORE** has incurred injury, and will continue to incur injury for which he is entitled to recover. **MOORE** seeks an award of all action damages as well as exemplary damages against **EXAMWORKS**.

44. **MOORE** also seeks the remedies of disgorgement and fee forfeiture. More specifically, **MOORE** requests that **EXAMWORKS** be required to (1) disgorge all profits and other benefits it improperly obtained, either fraudulently or negligently, through its breaches of fiduciary duty and breaches of trust, its misuse of **MOORE**'s license number, and its status as his agent with respect to his DDEs ; and (2) forfeit all fees that **EXAMWORKS** obtained in providing the dishonest, bad-faith, and incompetent scheduling, billing, and collection services for **MOORE**. An agent who breaches its fiduciary duty to its principal is not entitled to be compensated for its services, and fee forfeiture is a proper remedy.

B.  **Constructive Fraud**

45. **MOORE** incorporates by reference all of the allegations set forth at Section III. above as if fully set forth herein.

46. **EXAMWORKS** intentionally committed the overbilling and concealed the misconduct from **MOORE** in order to obtain and retain excess profits. **EXAMWORKS** knew and understood the services it could charge for and maximum allowable rates for such services but nevertheless billed insurers excess amounts. Although some insurers "caught" **EXAMWORKS** overbilling and paid only the lower appropriate rates, on many other occasions **EXAMWORKS** received overpayments for **MOORE**'s DDE services as a result of their overbilling.

47. **EXAMWORKS**' fraudulent intent is evidenced by the fact that **EXAMWORKS** distributed fees to **MOORE** in accordance with the permissible rates and charges while keeping all excess amounts for itself. **EXAMWORKS**' deceptive and/or fraudulent intent can also be inferred from the fact that **EXAMWORKS** routinely charged certain insurers (e.g., insurers known to have more diligent auditing procedures) the proper fees, while routinely charging numerous other insurers improper excess amounts. **EXAMWORKS** pocketed the excess/unearned amounts and was thereby unjustly enriched.

48. Plaintiff **MOORE** sues Defendant **EXAMWORKS** for constructive fraud and resulting damages.

C.  **Breach of Implied or Oral Agreement, or Alternatively, Breach of the Maven Exams Agreement**

49. **MOORE** incorporates by reference all of the allegations set forth at Section III. above

as if fully set forth herein.

50. **MOORE** asserts that the Maven Exams Agreement was not properly assigned to **EXAMWORKS** because it was a personal services contract that was not assignable without **MOORE**'s express consent, which he did not give. **EXAMWORKS** did not fully disclose and, upon information and belief, misrepresented the relationship between Maven Exams and **EXAMWORKS**.

51. However, **MOORE** and **EXAMWORKS** did agree impliedly and/or orally for **EXAMWORKS** to provide designated doctor administrative duties on behalf of **MOORE** for a fee in connection with his DDEs. **EXAMWORKS** was designated as **MOORE**'s agent with the Texas Department of Insurance, Division of Workers' Compensation. As **MOORE**'s Agent, **EXAMWORKS** had an obligation to perform its administrative duties for him with reasonable care, honestly, accurately, in an ethical manner and good faith, and with full disclosure and strict accountability.

52. Because of the principal-agent relationship between **MOORE** and **EXAMWORKS**, these fiduciary duties are baked into the contractual obligations **EXAMWORKS** owed to **MOORE**, whether those obligations are pursuant to an implied or oral agreement between the parties as **MOORE** contends, or pursuant to the Maven Agreement.

53. **EXAMWORKS** breached its implied and/or oral agreement with **MOORE** by failing to provide competent, honest, timely and accurate scheduling and billing services to **MOORE**, and by intentionally mis-billing and overbilling his services and pocketing the ill-gotten gains.

54. Alternatively, if it is determined that Landmark and **EXAMWORKS** are proper parties to the Maven Agreement, **MOORE** asserts that **EXAMWORKS** has breached that

agreement. As set forth herein, **EXAMWORKS** failed to honestly, competently, timely, accurately, and in good faith provide the administrative services that Maven Exams agreed to provide to **MOORE**. Further, **EXAMWORKS** failed to manage all collections appropriately.

55. **EXAMWORKS**' breaches of its agreement with **MOORE** interfered with **MOORE**'s ability to perform his professional services to the standard set by the State of Texas and in compliance with the laws of Texas as well as his ability to meet all deadlines and standards required of a Designated Doctor as described by the Texas Department of Insurance. **EXAMWORKS**' breaches of contract also caused actual damages to **MOORE** in the form of threat to **MOORE**'s certification as a Designated Doctor and his chiropractic license, unnecessarily subject him to potential penalties, disciplinary action, and liability, and collection of monies that should not have been collected.

56. **MOORE** has suffered harm as a result of **EXAMWORKS**' breaches of the implied/oral agreement, or alternatively, the Maven Agreement, for which he is entitled to recover.

57. Additionally, **MOORE** requests an award of damages, including, but not limited to restitution damages, and costs, including reasonable attorney's fees, incurred in bringing this claim. In addition and/or in the alternative, all agreements between the parties be rescinded.

D.     <u>Request for an Accounting</u>

58. **MOORE** incorporates by reference all of the allegations in Section III. above as if fully set forth herein.

59. **MOORE** would show that the business relationship began in or about 2013 and continued for years. He would further show that the business relationship continued through

2019, and that he forwarded an email to Eric Stanley of **EXAMWORKS** on or about September 12, 2019, stating that he no longer wished to utilize **EXAMWORKS** as his scheduling company after October 2, 2019.

60. **EXAMWORKS** retains possession of records related to **MOORE**'s Designated Doctor Examinations and the billings and collections related to those exams. As his Agent, **EXAMWORKS** was the custodian of the billing, collection, reports and other records related to **MOORE**'s DDEs. **EXAMWORKS** has not provided **MOORE** with these records and continues to maintain control over them. These records should reflect the services MOORE actually provided in connection with his DDEs and the amounts **EXAMWORKS** billed, received, and paid over to **MOORE** for those services.

61. In light of **EXAMWORKS**' service as **MOORE**'s Agent and its fraudulent billing activity as described herein, **MOORE** requests that the Court order a full accounting of all the services and amounts **EXAMWORKS** billed and collected for or on behalf of **MOORE** under his license and/or in conjunction with his Designated Doctor Examinations.

### V. Damages

62. **MOORE** sues **EXAMWORKS** for all damages that he is entitled.

63. **MOORE** sues for compensatory damages suffered in the past, including economic losses, benefit of the bargain damages, actual damages, restitution damages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic damages, and compensatory damages that, in reasonable probability will be sustained in the future, which include economic losses, benefit of the bargain damages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic

losses. **MOORE** sues for the injury to his reputation proximately caused by **EXAMWORKS'** conduct.

64. In addition and/or in the alternative, Plaintiff **MOORE** requests that the court place a constructive trust on all profits and other benefits Defendant **EXAMWORKS** illegally obtained.

65. In addition and/or in the alternative, Plaintiff **MOORE** requests that Defendant **EXAMWORKS** disgorge all profits and other benefits it improperly obtained.

66. In addition and/or in the alternative, Plaintiff **MOORE** requests that Defendant **EXAMWORKS** be required to forfeit all fees that Defendant **EXAMWORKS** obtained.

## VI. Attorney's Fees

67. Because of the conduct of Defendant **EXAMWORKS**, Plaintiff **MOORE** has been compelled to engage the services of the undersigned law firm to prosecute this action. Plaintiff **MOORE** is entitled to recover a reasonable sum for the necessary services of his attorney(s) in the preparation and trial of this action, and for any appeals to the Court of Appeals for the Fifth Circuit, and/or Supreme Court of the United States. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

## VII. Prayer

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff **STEVEN MOORE, D.C.** respectfully requests that Defendant **EXAMWORKS, L.L.C.** be cited to appear and answer, and that on final trial, Plaintiff **STEVEN MOORE, D.C.** have the following:

1. Compensatory damages;
2. Exemplary damages;
3. Actual, direct, special, consequential damages;

4. Defendant **EXAMWORKS** forfeit and return all fees retained for its services;

5. Defendant **EXAMWORKS** disgorge any wrongful profits or other unjust enrichment obtained;

6. A constructive trust be established on all profits and other benefits Defendant **EXAMWORKS** illegally obtained;

7. A full accounting be ordered of all the services and amounts **EXAMWORKS** billed and collected for or on behalf of **MOORE** under his license and/or in conjunction with his Designated Doctor Examinations;

8. Agreements between the parties be rescinded;

9. Attorney's fees;

10. Pre-judgment interest as provided by law;

11. Post-judgment interest as provided by law;

12. Costs of court; and

13. Such other and further relief at law or in equity which Plaintiff may show himself justly entitled.

Respectfully submitted,

*/s/ Katie P. Klein*
KATIE PEARSON KLEIN
Attorney-in-Charge
State Bar No. 11561900
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
DALE & KLEIN, L.L.P.
1100 E. Jasmine Ave. Ste 202
McAllen, Texas 78501
(956) 687-8700
(956) 687-2416 (fax)
office@daleklein.com
Attorneys for Plaintiff

**Certificate of Service**

    I certify that a true and correct copy of the foregoing instrument has been served on all counsel of record by notice of electronic filing on August 11, 2023, to wit:

Joshua A. Romero
JACKSON WALKER LLP
100 Congress Avenue, Ste. 1100
Austin, TX 78701
jromero@jw.com

                                                 */s/ William Mount, Jr.*
                                                 WILLIAM D. MOUNT, JR.